Marianne Dugan, OSB 932563
mdugan@mdugan.com
259 E. 5th Ave. Ste 200-D
Eugene, OR 97401
Tel: (541) 338-7072

Kimberly Sherman, OSB 174646
kim.sherman@e3lawgroup.com
Education, Environmental, & Estate Law Group LLC
P.O. Box 728
Eugene, Oregon, 97440
Tel: (503) 910-6172

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| LEXYINGTON McINTYRE | **6:18- CV-768-RS** |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| v. | Americans with Disabilities Act<br>42 U.S.C. § 12101 et seq.<br><br>Section 504 of the<br>Rehabilitation Act of 1973<br>29 U.S.C. § 794 et seq. |
| EUGENE SCHOOL DISTRICT 4J | JURY TRIAL REQUESTED |
| Defendant. | |

## I.      INTRODUCTION

This action is brought against Defendant Eugene School District 4J ("District") under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, to remedy a  pattern and practice of discrimination against individuals who seek accommodation for their known disabilities. The District discriminated against a person by reason of her disability, by failing to take simple, no-cost, reasonable measures to accommodate her disabilities within the public school setting, including those measures the District had previously approved as reasonable accommodations. The District acted with deliberate indifference, knowing that the Plaintiff's requests for accommodations were protected under state and federal law and failing to respond appropriately even when repeatedly notified by Plaintiff and her parents, and the District acted with clear animus when teachers openly acted with discriminatory intent, informing Plaintiff that they would not implement the accommodations approved for the Plaintiff. The District further knowingly failed to protect the Plaintiff from retaliation and bullying after the removal from the school of a teacher found culpable of discrimination against the Plaintiff and other person(s) with disabilities, which said failures served to create a hostile learning environment.

## II.      JURISDICTION AND VENUE

1.      This is an action for declaratory and injunctive relief, brought pursuant to Title II Americans with Disabilities Act ('the ADA"), 42 U.S.C. § 12101 to 12213, and Section 504 of The Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

2.      This court has jurisdiction over this action under 28 U.S.C. §1331 and 1343(a) for claims arising under the ADA and Section 504 of the Rehabilitation Act of 1973.

3.     This court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

4.     The Plaintiff has standing to be before this court. At all times during the events detailed below, Plaintiff and her parents were residents of Eugene, Lane County, Oregon. The injuries described below are concrete and particularized actual injuries-in-fact. The injuries-in-fact were caused by the defendant's actions or refusals to act in a manner required by federal law. The relief requested is within the court's power to provide.

5.     Defendant is a public agency, located within this jurisdiction and transacts business in this  jurisdiction, and a substantial portion of the acts giving rise to this action occurred in this jurisdiction.

6.     The actions giving rise to this complaint took place in the City of Eugene, Lane County, Oregon. At all times during events detailed below, Plaintiff was a resident of Eugene, Oregon: and Plaintiff was a school-aged student living within the Eugene School District 4J attendance boundary. Thus, venue is properly vested in this court pursuant to 28 U.S.C. §1391(b).

7.     As a substantial portion of the acts or omissions giving rise to this action occurred in Lane County and the Defendant's principal place of business is Lane County, venue is properly vested in this Court  pursuant to 28 U.S.C.  § 1391(b).

### III.     PARTIES

Plaintiff  Lexyington McIntyre

8.     On the date this case was commenced, Plaintiff Lexyington McIntyre ("Plaintiff") was an 18-year-old adult female who previously attended public school at South Eugene High School in Eugene School District 4J and graduated with an Oregon High School

Diploma in June, 2017. Plaintiff qualified as a student with disabilities under Section 504 of the Rehabilitation Act; District described appropriate accommodations to classroom, testing, and medical environments in a 504 accommodations plan ("504 plan") beginning in 2012. Plaintiff reached the age of majority on MM/DD/2017. Plaintiff was enrolled in the District's French Immersion Program from the first grade through her graduation from high school in June 2017.  Enrollment in a Language Immersion Program in the District is by lottery.

Defendant Eugene School District 4J

9.      Eugene School District 4J ("District") is a local government body  whose responsibility is to oversee the public school education of students grades K through 12, or to age 21 in the case of some students with disabilities. The District is located Eugene, Oregon.  The District is a public entity under Title  II of the ADA as defined in 28 U.S.C. § 12131(I) and 28 CFR §35.104. The District is a recipient of federal financial assistance under 29 U.S.C.  §794.  The District uses said federal  financial assistance in its program activities.

10.     The District's principal place of office is located at 200 N. Monroe Street, Eugene OR 97402.

## IV.     FACTUAL ALLEGATIONS

11.     Beginning January 10, 2012, Plaintiff was eligible as a student with a disability and was supported by accommodations under the Rehabilitation Act, detailed in what the District referred to as a Section 504 plan. The Plaintiff's identified disability was Attention Deficit Disorder. In September 2015, Student was also diagnosed by her medical team with Addison's disease with potentially life-threatening impacts. The

District thereafter included an emergency medical protocol in the Plaintiff's September 2016 504 plan. Plaintiff relies on her 504 plan accommodations to access her education and appropriately demonstrate her knowledge and skills on classroom, district, state, and college application assessments. Plaintiff relies on the medical protocol component of her 504 plan to manage the impacts of Addison's disease that include stress and anxiety and the potential for life-threatening physical responses to injuries.

12.    Plaintiff's Section 504 plan included the following accommodations: "INSTRUCTIONAL/CURRICULUM: When requested, [Plaintiff] may have extra time on tests. In particular, she may require more processing time on French, Math and Science tests. [Plaintiff] will be allowed to complete work beyond the end of the semester and will not receive reduced credit due to excused absences. When requested, [Plaintiff] may have extra time to complete assignments with a mutually agreed upon due date. Reduce assignments and projects down to meet essential learning outcomes while staying faithful to the intent of the learning content. This is meant to reduce workload and is not intended to provide modifications to the curriculum. ENVIRONMENTAL: Preferred seating at the front of the classroom. [Plaintiff] needs a quiet testing environment outside the classroom. She will work with teachers to establish a place to take tests. OTHER: Upon request, [Plaintiff] will be given an additional copy of textbooks to keep at home. If [Plaintiff] is seriously injured, she will have medication stored at school. 911 will be called. Teachers will receive specific information about the location and protocols about giving [Student] the required injection. [Plaintiff] wears a (sic) emergency alert bracelet. It may be necessary for [Plaintiff] to leave class immediately if she feels unwell, particularly if she develops a fever. Home and the school nurse should be called. On field

trips [Plaintiff] will carry a (sic) emergency medication in the event of an emergency.

[Plaintiff] needs a quiet testing environment outside the classroom. She will work with

teachers to establish a place to take tests."

13.     Plaintiff's Section 504 Plan was amended in September 2015 to include the

following basis for the accommodations: "[Plaintiff] is diagnosed with Addison's disease,

which is a life-threatening disease and will require her to have lifelong steroids therapy.

Other medicines are counter-indicated which means that [Plaintiff] is unable to take

medication for ADD. The stress of school starting and the new diagnosis, as well as no

longer taking [ADD] medication may impact [Plaintiff]'s ability to access her education.

[Plaintiff] is diagnosed with ADD; she does really well on tests and assignments and then

will get a very poor grade. These gaps are around test taking or missing assignments. Her

parents report that she is an A student, but will experience some lapses that impact her

grades. [Student] reports that 'when other students' brains turn on, hers turns off.' It takes

her a little more time to process things. She is easily distracted in class, periodically

forgetful. Successful strategies used by her and her parents include the use of a planner

and lots of verbal prompting. [Plaintiff] has sleep disturbances and may be up half the

night. [Plaintiff] has scoliosis which is impacted by carrying books home each day."

14.     Additionally, in September 2015, Plaintiff was diagnosed with PTSD by Lisa

Shanahan, Licensed Clinical Social Worker.

        **School Year 2013-2014**

15.     When she enrolled as a freshman at SEHS, Plaintiff continued her enrollment in

the District's French Immersion Program (which she began in first grade) and also

entered into the International High School program, located within the South Eugene

High School campus.

16.    All students enrolled in District's French Immersion program are required to enroll and successfully complete two trimesters of French language instruction per school year. Plaintiff was enrolled in Michael Stasack's ("Stasack") French Language class during the first and third trimesters of the 2013-2014 school year. During this time, in meetings with Plaintiff, Plaintiff's parents, and school administrators, Stasack repeatedly told the Plaintiff and other attendees that, due to Plaintiff's disability, she did not belong in the French Immersion Program. Stasack also stated in some of these meetings that he would not implement the Plaintiff's 504 plan accommodation because he had other students that "deserved" his attention.

17.    In May 2014, Parents filed a formal "Bullying/Harassment" complaint with the District against Stasack. District administrators, specifically Ted Heid and Cheryl Linder, Director of Student Services ("Linder"), investigated the allegations detailed in the complaint. At the conclusion of the District's investigation, the District issued a report to Parents in which the district found two violations of school board policy, specifically regarding "Harassment, Intimidation, Bullying" and discrimination related to Stasack's actions at a specific meeting on April 24, 2014. As a "remedy" and to allegedly prevent further disability-based discrimination and harassment by Stasack, the District offered to either allow the Plaintiff to attend French courses in the future at the University of Oregon through the District's "DuckLink" program (designed to allow dual enrollment in District high school programs and University of Oregon coursework) or to be instructed in French language by a teacher other than Stasack through an "Independent Study" designation. Stasack remained the French teacher for all other students in the French

Immersion Program and received no public reprimand for his violations of school board policies.

### School Year 2014-2015

18.　　The Plaintiff attended school abroad in Germany as an exchange student during the 2014-2015 school year, her sophomore year of high school.

### School Year 2015-2016

19.　　Plaintiff returned to the French Immersion Program at South Eugene High School for the 2015-2016 school year, her junior year. Stasack continued to instruct all French language classes for French Immersion students except for Plaintiff and one other 11th grade student, who was also removed from Stasack's class in order to access accommodations for his disability. The District again proposed the "remedies" previously set forth for the discrimination and harassment findings for the Plaintiff, but with additional caveats. The District discouraged Plaintiff's use of "DuckLink" due to timing and cost to the District, while encouraging the Plaintiff to choose the "independent study" option. The District later disclosed that the instructor chosen by the District for "independent study" was not fully accredited to administer International Baccalaureate ("IB") exams recommended for all International High School/Immersion students during grade 12. The District also did not inform Plaintiff that the instructor also was not accredited to teach Advanced Placement ("AP") classes, including French, which were available to French Immersion students in grade 11 and 12. Student was otherwise eligible to receive an International Baccalaureate diploma.

20.　　Linder, Principal Andy Dey ("Dey"), and other District employees communicated by email regarding "solutions" to remove Student from Stasack's classroom.

21.     Plaintiff agreed to enroll in the "independent study" option. The instructor, Ms. Suzie McLauchlin ("McLauchlin"), obtained a textbook from Stasack, but was not provided a syllabus or curriculum from either Stasack or the District. The "independent study" did not have a regularly scheduled meeting time, and the Plaintiff and McLauchlin seldom met more than two periods per week, in comparison to the five periods students in Stasack's French classes met. In addition, McLauchlin repeatedly informed Plaintiff that McLauchlin was not being compensated by the District for her extra work with the Plaintiff, leading to Plaintiff feeling emotional distress. Furthermore, because McLauchlin was not licensed in French language instruction at the secondary level, the Plaintiff was not properly prepared for the AP test in French in her 11th grade year, the time French Immersion students were expected to sit for the standardized exam. As a result, the Plaintiff did not have the same opportunities as other non-disabled French Immersion peers to interact, converse and practice her French language skills with other French learners or to fully participate in AP examination opportunities. A student who earns a high enough score on the AP exam is awarded college level credit for that subject area, thereby reducing potential college tuition costs.

22.     In September 2015, Plaintiff was diagnosed with Post-Traumatic Stress Syndrome by Lisa Shanahan, Licensed Clinical Social Worker, due to the harassment and discrimination of Plaintiff by teachers and students during the 2013-2014 school year.

23.     On September 25, 2015, the District amended the Plaintiff's Section 504 plan to include accommodations specific to her new diagnosis of Addison's Disease: "(1) [Plaintiff] will be allowed to complete work beyond the end of the semester and will not receive reduced credit due to excused absences and (2) Reduce assignments and projects

down to meet essential learning outcomes while staying faithful to the intent of the
learning content."

24.    Throughout the 2015-2016 school year, Plaintiff's math instructor, Susie
Nicholson ("Nicholson"), repeatedly refused to implement Plaintiff's accommodations as
set forth in the Section 504 plan and requested by Plaintiff. Specifically, Nicholson
refused to allow Plaintiff to use an alternative, quiet location in which to take
examinations and refused to provide Plaintiff with extra time to complete exams and
projects. For exams, Nicholson required that the Plaintiff sit in the rear of the classroom
and turn her desk to face the back wall. This failed to properly accommodate Plaintiff's
needs as specified in her Section 504 plan and caused Plaintiff to be humiliated. Plaintiff
and her parents notified Nicholson and school administrators to the inappropriate actions
of Nicholson. After parents contacted Principal Dey, Nicholson thereafter would hand
Plaintiff her exam, require that the Plaintiff: (1) leave the room, (2) locate a proctor that
was acceptable to Nicholson, and (3) locate an empty and available room or office for
testing, all within the same time allocated to students who remained in the classroom.
This occurred despite Plaintiff's 504 plan clearly stating that Plaintiff would receive a
separate quiet testing site and extra time, especially on tests. Plaintiff and parents again
objected and notified Nicholson and Dey, but Nicholson continued to refuse to
appropriately implement Plaintiff's accommodations.

25.    The stress, anxiety, and effects on Plaintiff resulted in multiple days of missed
school, causing the student to feel further behind and more anxious. The stress and
anxiety also exacerbated Plaintiff's Addison's symptoms.

26.    Plaintiff's parents contracted privately with outside service providers to provide

FIRST AMENDED COMPLAINT                                                    10

tutoring to Plaintiff in math, French language, executive functioning, and organizational skills.

27.    Plaintiff's parents contracted privately with mental health therapists to provide mental health counseling to Plaintiff to assist Plaintiff in coping with the stress and anxiety of the events at SEHS.

28.    During the 2015-2016 school year, Stasack was subject of a second complaint alleging discrimination and harassment of a student with disabilities in the French Immersion program. The second complaint was substantiated as well, and the District announced that Stasack would be transferred to teach at a District elementary school the following school year.

29.    During the third trimester of 2017, Nicholson was the subject of multiple emails and conversations between Plaintiff's parents, Plaintiff, and school administrators regarding Nicholson's failure to provide reasonable accommodations to Plaintiff in math class and for math exams.

30.    On May 26, 2016, Plaintiff's peers in the French Immersion program staged a "walk-out" during McLauchlin's French social studies class to protest Stasack's 'dismissal.' All students in this class were enrolled in the French Immersion Program. Both Plaintiff and the student who had filed the second complaint were students in this class. The students planning the action approached McLauchlin prior to the walk out, and McLauchlin allowed them to stage the walk out from her class, despite the students stated reason for the walkout that Stasack was being "fired because of the 504 kids." Students also stated they were "protesting" the accommodations Plaintiff and other students with disabilities received while in the French Immersion program. Students walked from

FIRST AMENDED COMPLAINT                                                    11

McLauchlin's classroom to Principal Dey's office, demanding an audience with the administrator to air their "grievances." Plaintiff was told by her peers to remain in the classroom and not join them in their "walk-out."

31.     After the "walk out," Plaintiff felt stress, anxiety, and exclusion from her peer group. Plaintiff felt betrayed by McLauchlin, who acknowledged to Plaintiff and her parents that she knew about the planned walkout for days, that she anticipated the walkout would result in mental and emotional harm to Plaintiff, but did not act to prevent the walkout or mitigate the harm to Student. Administrators, including Principal Dey, were also informed in advance of the planned "protest" but did not act to intervene. These events created a hostile learning environment for the Plaintiff within the French Immersion Program and International High School.

32.     Following the "walk-out," McLaughlin texted Plaintiff's Parent to ask permission to teach a lesson to French Immersion students on micro-aggressions. Parents declined the offer, stating a belief this would cause further harm.

33.     Despite Parents' wishes to not teach the lesson, one week following the walkout, Jericho Dunn taught a lesson to the FI students about micro-aggressions, during which Plaintiff's classmates claimed that they are aware of what micro-aggressions are and that they do not engage in such behaviors. Plaintiff tried to speak out during the class but was "shut down" by her peers. No adult supported her attempt to speak on her behalf. This further isolated Plaintiff from her peers. The administrators had pre-warned parents that the Micro-Aggressions lesson would be presented, and McLaughlin assured Parents that it would not be held during the International High School or French Immersion class unless Student and the other 504 student were comfortable with it. They were not

comfortable with this planned "lesson."

34.     Regardless, the administration scheduled the lesson during a class where these two students would be present.

35.     On June 13, 2016, Plaintiff fractured her ankle during physical education class. At the time of the accident, staff at SEHS failed to contact 911 as was explicitly required in Student's health protocol and 504 plan, since such physical trauma could result in a life threatening reaction due to Plaintiff's Addison's Disease. When Plaintiff reminded staff of the requirement to call 911, staff declined to implement the health protocol, claiming that Plaintiff would bear the financial burden of the ambulance service and it would reflect badly on the school.

### School Year 2016-2017

36.     At the outset of the 2016-2017 school year, Plaintiff's senior year, Plaintiff learned that the District failed to submit required paperwork for testing accommodations to the College Board. The District also informed the Plaintiff that any psychological, medical, or academic evaluations necessary to update the Section 504 plan would be at Plaintiff or parents' expense.  Despite repeated assurances throughout the previous year, school administrators declined to properly record credits toward graduation to Plaintiff's record for the "independent study" and resisted correcting erroneous failing grades placed on the Plaintiff's transcript after the June 13, 2016 PE accident and ankle fracture. Plaintiff was applying for college admissions and the incorrect grades and credits significantly depressed Plaintiff's grade point average (GPA).

37.     The District similarly declined to assist the Plaintiff in obtaining updated evaluations and approval for necessary and reasonable accommodations needed for the

Plaintiff to take the International Baccalaureate and other standardized College Board examinations.

38.     Throughout Plaintiff's senior year, Plaintiff was subjected to a hostile learning environment and bullying from peers in the French Immersion program who continued to blame the students with disabilities for the removal of Stasack from the high school. Teachers and administrators did not intervene to correct or punish the harassment and bullying. Students planned events near graduation to include Stasack and designed sweatshirts for the graduation ceremony celebrating him, rebuffing the objections of Plaintiff and other students with disabilities who felt subject to discrimination by Stasack.

## V.     FIRST CLAIM FOR RELIEF

### THE AMERICANS WITH DISABILITIES ACT

39.     Plaintiff incorporates by reference the allegations of all preceding paragraphs.

40.     Title II of the ADA prohibits a public entity from excluding a person with a disability from participating in, or denying the benefits of, the goods, services, programs and  activities of the entity or otherwise discriminating against a person on the basis of disability.  42  U.S.C.  § 12132 et seq.

41.     At all times relevant to this action, the District was and is a public entity within the  meaning of Title II of the ADA, receives federal funding, and provides educational instruction and services to all students of appropriate age who reside within the school district boundaries.

42.     At all times relevant to this action, Plaintiff was a qualified  individual with a disability within the meaning of Title II of the ADA and met the essential  eligibility requirements for the receipt of the services, programs or activities provided by the

District.

43.     From September 2015 to June 2017, Defendant failed to provide reasonable accommodations to the Plaintiff that would ensure that the Plaintiff, an individual with disabilities, was educated with non-disabled students, allowed to interact with non-disabled peers, and enjoyed the same benefits of the French Immersion and International High School programs that her non-disabled peers enjoyed.

44.     As a direct and proximate result of Defendant's violations of Title II of the ADA, Plaintiff was injured as set forth herein.

45.     At times relevant to this complaint, Defendant had notice that accommodations were required, Defendant put in place a specific written plan describing said accommodations, and Defendant deliberately and repeatedly failed to act upon that knowledge.

## VI.     SECOND CLAIM FOR RELIEF

### SECTION 504 OF THE REHABILITATION ACT OF 1973

46.     Plaintiff incorporates by reference the allegations of all preceding paragraphs.

47.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq. and the regulations promulgated in 34 C.F.R. §§ 104.31 through 104.37 prohibit discrimination against people with disabilities in preschool, elementary, and secondary education programs by   recipients of federal funding.  Section 504 provides, in pertinent part, that:

> No otherwise qualified handicapped individual…shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance […].

48.     Defendant School District has received substantial federal financial assistance at all relevant times.

FIRST AMENDED COMPLAINT                                                    15

49.    Plaintiff is an otherwise qualified handicapped individual within the meaning of Section 504 of the Rehabilitation Act.

50.    Defendant have discriminated against Plaintiff in programs and activities receiving federal financial assistance solely because of her disability, by failing to deliver reasonable accommodations, failing to provide education and related aids and services that are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met, failing to provide a free education by requiring Plaintiff's parents to pay for certain tutoring and evaluation services, creating and supporting a hostile learning environment, and permitting teachers and students to engage with impunity in bullying and harassment, in violation of 29 U.S.C. §794 and the regulations promulgated thereunder.

51.    As a proximate result of Defendant's violations of Section 504 of the Rehabilitation Act of 1973, the Plaintiff has been injured as set forth herein.

52.    At times relevant to this complaint, Defendant had notice that reasonable accommodations were available to the Plaintiff and deliberately failed to act upon that knowledge.

### VII.    PRAYER FOR RELIEF

        **WHEREFORE**, Plaintiffs pray for relief as follows:

53.    A declaration that Defendant's policy, pattern and/or practice of failing to implement Section 504 plans for disability accommodation does not comply with the requirements of Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, and Oregon disability laws;

54.    A declaration that Defendant's policy, pattern and/or practice of failing to

mitigate hostile learning environments, harassment, and bullying discriminates against Plaintiff and other similarly situated students with disabilities and fails to comply with the requirements of Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, and Oregon disability laws;

55.    An order and judgment enjoining Defendant from violating Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, and Oregon disability laws, including anti-retaliation provisions that prohibit retaliation, harassment, or discrimination against anyone, disabled or not, on the basis of that person's efforts to oppose unlawful discriminatory practices;

56.    Enter judgment in favor of Plaintiff in an amount of economic and non-economic money damages, incurred either by Plaintiff or Plaintiff's parents related to the events to be proven at trial;

57.    Award Plaintiff's reasonable attorneys' fees, litigation expenses and costs, in the full amounts allowed by law, including expert witness fees pursuant to 29 U.S.C. § 794(b); 42 U.S.C. § 12133; and 42 U.S.C. § 12205.

58.    Pre- and post-judgment interest at the highest rate allowed by law;

59.    All such other and further relief as the Court deems just and equitable.


Respectfully submitted this third day of May 2018.

s/ Marianne Dugan
Marianne Dugan, OSB 932563
mdugan@mdugan.com
259 E. 5th Ave. Ste 200-D
Eugene, OR  97401
Tel: (541) 338-7072

s/ Kimberly Sherman

Kimberly Sherman, OSB 174646
kim.sherman@e3lawgroup.com
Education, Environmental, & Estate Law Group LLC
P.O. Box 728
Eugene, Oregon, 97440
Tel: (503) 910-6172

Attorneys for Plaintiff